IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANTONIO GARCIA, ,

Plaintiff,

v.                                              Case No. 11-1141-JTM

TYSON FOODS, INC., *et al.*,

Defendants.


MEMORANDUM AND ORDER


Plaintiff Antonio Garcia brought this action for retaliatory discharge against his former employer, Tyson Foods, and one of its supervisors, Juan Carrera. Garcia alleges that he was terminated by Tyson on June 9, 2010, because of his participation as a class representative in the Fair Labor Standards Act (FLSA) action recently tried by the court, *Garcia v. Tyson Foods*, No. 06-2198-JTM (*Garcia I*). Garcia has also alleged that the termination defamed him and has interfered with his prospective business relationships. The defendants have moved to dismiss the action under the doctrine of *res judicata*, federal preemption, and failure to state a claim. For the reasons provided herein, the court finds that  the Motion to Dismiss should be granted in part and denied in part.

The defendants argue that the action should be barred by *res judicata*, since the termination occurred nearly a year before the trial of the FLSA claims in Case No. 06-

2198, yet Garcia made no attempt to present his claims in that action. Successive claims are barred under the doctrine claim preclusion if (1) prior litigation occurred resulting in a decision on the merits, (2) occurred between the  same parties or persons in privity with them, (3) the action was based on the same cause of action, and (4) the parties had a full and fair opportunity to litigate the issue. *Santana v. City of Tulsa*, 3359 F.3d 1241, 1246 n. 3 (10th Cir. 2004). Of these elements, the only issue in contention is the third.

In determining the existence of a common cause of action, the Tenth Circuit has adopted the transactional approach RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982), which seeks to pragmatically determine whether the allegations "'form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Yapp v. Escel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999) (quoting § 24).

The defendants rely on *Yapp*, where the court found that preclusion applied in the context of an employment action, and a similar case, *Clark v. Haas Group, Inc.*, 953 F.2d 1235, 1239 (10th Cir.1992). In both cases, the court held that a successive action for wrongful termination was precluded by an earlier action challenging the conditions of the employments. In both cases, the "second claim was precluded by the first since both were based upon a single transaction: the employment relationship." 186 F.3d at 1227 (footnote omitted).

However, the Tenth Circuit has indicated that a different rule may apply where the termination occurred after the first suit was filed. In *Mitchell v. City of Moore*, 218 F.3d 1190 (10th Cir. 2000), the court distinguished *Yapp* and *Clark* on the grounds that in

2

those cases the termination of employment occurred before the first suit was filed, while

in *Mitchell* the plaintiff was terminated after the first suit was filed.

The defendants correctly note that the cited language from *Mitchell* is *dicta*, the

court determining that "[r]egardless of the outcome of the third [same cause of action

element]," claim preclusion did not apply under the facts of the case because the second

element was missing, a lack of identical parties. 218 F.3d at 1203. However, this court

finds both the reasoning in *Mitchell*, and the District of Kansas case it cited with

approval, *Johnson v. Board of County Comm'rs of Johnson County, Kansas*, No. 99-2289-

JWL, 1999 WL 1423072  (D.Kan. Dec. 9, 1999), to be persuasive.

In *Johnson*, Judge Lungstrum held that a claim for wrongful termination was not

precluded by an earlier employment action, where the termination occurred after the

first action was filed.  "Because a plaintiff has no obligation to expand his or her suit in

order to add a claim that he or she could not have asserted at the time the suit was

commenced, several circuits have held that res judicata does not bar a second  lawsuit

to the extent that suit is based on acts occurring after the first suit was filed." 1999 WL

143072, at *3. Judge Lungstrum noted that this conclusion was consistent with decisions

in other circuits,[1] and that the defendant "has directed the court to no authority

suggesting the rule should be otherwise." *Id*. at *4.

---

[1]  The cases include *Computer Assocs. Internat'l v. Altai*, 126 F.3d 365, 370 (2d Cir. 1997);
*NBN Broadcasting, Inc. v. Sheridan Broadcasting Networks,* 105 F.3d 72, 78 (2d Cir.1997);
*Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dis*t., 750 F.2d 731, 739 (9th
Cir.1984); *Manning v. City of Auburn*, 953 F.3d 1355, 1360 (11th Cir. 1992); and *Spiegel v.
Continental Illinois National Bank*, 790 F.2d 638, 646 (7th Cir.1986).

Similarly, the defendants here point to no cases reaching a different conclusion. Although their Reply notes the additional decision of the Tenth Circuit in *Wilkes v. Wyoming Dept. of Employment*, 314 F.3d 501, 504-05 (10th Cir. 2002), that decision simply followed *Yapp* and *Clark* in that the termination occurred before the first action was filed. *See Wilkes*, 314 F.3d at 502.

Further, the transactional approach is "'to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Yapp*, 186 F.3d at 1227 (quoting RESTATEMENT (SECOND) OF JUDGMENTS, § 24 (1982)).

The defendants repeatedly note that Garcia was terminated on June 9, 2010, nearly a year before the trial of the action. More relevant, however, is that the termination occurred a year and a half after Tyson's initial summary judgment motion was denied and an interlocutory appeal on the issue dismissed on August 19, 2008, over a year after *Garcia I* was certified as a class action on February 12, 2009, and after the parties had engaged in extensive discovery on the FLSA issues in *Garcia I*.

Lumping the  present retaliatory discharge claim with the class-wide FLSA action can in no sense be considered "a convenient trial unit," nor would it be consistent with the parties expectations. At the time Garcia was terminated, the *Garcia I* class action had a long history, centering on class-wide issues of employee treatment under the FLSA, and combining the two actions, from a pragmatic perspective, would have presented serious disadvantages. For these reasons, the court finds that claim

4

preclusion does not bar the present litigation of the plaintiff's alleged wrongful termination.

In the first count of Garcia's Complaint, he alleges that his termination was retaliation for "his participation in protected union and FLSA suit organization Activities. (Dkt.  1, at 5). He argues that the court has federal question jurisdiction under 28 U.S.C. § 1331, "inasmuch as Plaintiff asserts he was retaliated against for participating in conduct protected pursuant to 29 U.S.C. §§ 157, 158 and 215." (*Id.* at 2).

The defendants argue that the plaintiff's claims of anti-union activity under Sections 157 and 158 – Sections 7 and 8 of the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* – are preempted by the NLRA, and must first be presented to the National Labor Relations Board. *See San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959); *Felix v. Lucent Technologies*, 387 F.3d 1146, 1165-66 (10th Cir. 2004). The plaintiff concedes the preemption of the NLRA claims, (Dkt.  26, at 3), but argues that the claim of FLSA retaliation should survive. The plaintiff is correct. *See, e.g., Cardenas v. UPS*, 2010 WL 5116343, *5 (C.D. Cal. Dec. 9, 2010) (§ 215 retaliation claims are not subject to *Garmon* preemption).

Next, the defendants move to dismiss the plaintiff's defamation claim, on the grounds that the Complaint does not supply sufficient details, including "what, exactly was allegedly said," and to whom it was said. (Dkt.  25, at 7). Further, they argue that the defamation claim must be dismissed since Garcia fails to allege any specific damage to his reputation. Garcia argues that the Amended Complaint is sufficient to present a triable case of defamation.

Contrary to the defendant's suggestion, a plaintiff alleging defamation need not recite the exact words of communication in issue. *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 271 (2d Cir.1999); *Condit v. Dunne*, 317 F.Supp.2d 344, 368 (S.D.N.Y. 2004). A claim of defamation complies with pleading requirements when it  supplies "sufficient notice of the communications complained of to allow [the defendant] to defend itself." *Bushnell Corp. v. ITT Corp.*, 973 F.Supp. 1276, 1287 (D.Kan.1997) (citing *McGeorge v. Continental Airlines*, 871 F.2d 952, 955 (10th Cir.1989)).

The defendants' Motion to Dismiss cites only one portion of the Amended Complaint, the general allegation of defamation presented in Count II. (Dkt.  23, at ¶ 23). The remainder of the Amended Complaint, however, supplies sufficient information to permit Tyson and Carrera to form a defense. The Complaint alleges that Garcia was told on June 9, 2011, that he was fired because an internal Tyson investigation heard a report that he had "'hit a member of  management.'" (*Id*. at ¶¶ 14, 17). The accusation of battery was made by Carrera, and was apparently made to the Tyson Personal Director Mitch Young. (*Id*.). The Complaint alleges that the Garcia had previously learned of the investigation, when he was prevented from clocking in "[o]n Monday, May 24, 2010," based on "accusations made by Defendant Carrera against him as to what had transpired between them the prior Friday [that is, May 21, 2010]."

Thus, the Amended Complaint gives both the substance of the allegedly false communication (that Garcia had committed battery on a Tyson manager), and that this information was communicated by Carrera to Young some time between May 21 and May 24, 2010. Further, since the termination was made after an investigation by its own

6

Personnel Department, Tyson cannot now credibly say it has no basis for understanding the substance of Garcia's defamation claim.

However, the defamation claim is defective in its failure to allege damage to Garcia's reputation. An injury to reputation is "the essence and gravamen of an action for defamation" under Kansas law. *Gobin v. Globe Publishing*, 232 Kan. 1, 6, 649 P.2d 139, 1243 (1982). Accordingly, "[u]nless injury to reputation is shown, plaintiff [will] not establish[] a valid claim for defamation." *Id.*

The Amended Complaint alleges that the termination based on alleged battery of a Tyson manager was "of a nature which would tend to deprive Plaintiff of the benefits of public confidence and social acceptance." (Dkt. 23, at ¶ 23). This falls short of actually alleging any specific injury to Garcia's reputation has occurred, only that the defamatory might, hypothetically do so, that it could do so. There is no allegation that the alleged battery was reported or published to any member of the public outside of Tyson's Personnel Department.

"In Kansas, any plaintiff in a defamation action must *allege* and prove *actual damages* and may no longer rely on the theory of presumed damages." *Wright v. Bachmurski*, 29 Kan.App.2d 595, 29 P.3d 979 (2001) (emphasis added). *See also Droge v. Rempel*, 39 Kan.App.2d 455, 180 P.3d 1094, 1097 (2008) (upholding dismissal of action under *Gobin*, where plaintiff "never claimed harm to his reputation"); *Classic Communications v. Rural Telephone Service*, 995 F.Supp. 1185, 1188 (D. Kan. 1998) ("[t]o state a claim for defamation under Kansas law, the plaintiff must plead … harm to the reputation of the person defamed); *Fisher v. Lynch*, 571 F.Supp.2d 1230, 1233 (D. Kan.

2008) (Kansas law requires the plaintiff plead and prove "actual damage to his reputation").

This court has previously found that generic allegations of reputational injury are insufficient to meet the requirement of Fed.R.Civ.Pr. 9(g) that claims of special damage be definitely alleged. In *Woodmont Corp. v. Rockwood Center Partnership*, 811 F.Supp. 1478, 1484 (D. Kan. 1993), the court observed that:

> The existence of special damages is an essential ingredient of plaintiff's claim for relief. 5 Wright, Miller and Kane, FEDERAL PRACTICE AND PROCEDURE, § 1310 at 702 (1990). In Paragraph 14 of the complaint, plaintiff has merely made the general allegation that defendants' public statements damaged its business reputation. It has not named any customer whose business was lost as a result of the statement, nor has it alleged the amount of such loss. *Cf. Thompson v. Osawatomie Publishing Co.*, 159 Kan. 562, 564, 156 P.2d 506 (1945). The plaintiff's allegations are insufficient, in our judgment, to satisfy the dictates of Rule 9(g).

Similarly, in *Alblulimir v. U-Haul Co. of Kansas*, No. 11-4014-EFM, 2011 U.S. Dist. LEXIS 75191, *10 (D. Kan. July 13, 2011), where the owner of a vehicle leasing dealership was told by U-Haul that her cars were dirty, the court dismissed the action for failure to plead the damages necessary under Kansas law, since "nothing in Ablulimir's pleadings can be construed to allege that her reputation in the community was damaged." Because the Amended Complaint makes no allegations of public dissemination of the alleged defamatory comment or that Garcia's reputation has been harmed, the claim is properly dismissed.

Finally, the defendants seek dismissal of the plaintiff's claim against Carrera for tortious interference with contractual relations. They contend that the claim must fail, since this tort requires proof that the defendant interfered with the contractual relations

between the plaintiff and a third party. *See Mack Laundry Service v. Mission Associates*, 19 Kan.App.2d 553, 873 P.2d 219, 225 (1994) (*citing* Prosser & Keeton, Law of Torts § 129 (5th ed. 1984)). A corporate agent, acting within scope of his employment, cannot be held liable for tortious interference with a contract to which the corporation is a party, because the agent is not a third party to the contract or expectancy. *Diederich v. Yarnevich*, 409 Kan.App.2d 108, 196 P.3d 411, 418 (2008).

Garcia responds by arguing that Carrera was not acting within the scope of his employment in reporting the alleged assault. Rather, as the Amended Complaint alleges, he made the report of the alleged battery "maliciously," done "in a manner calculated to deprive Plaintiff of the benefit of continuing his economically beneficial employment relationship." (Dkt.  23, at ¶ 25). The defendants' only rejoinder is that Garcia does not *explicitly* allege that "Carrera was not acting in his official capacity" at the time of the alleged defamation. (Dkt. 28, at 7).

Kansas law defines "malice" as "'evil-mindedness or specific intent to injure' or as a state of mind characterized by an intent to do a harmful act without a reasonable justification or excuse." *Turner v. Halliburton Co.*, 240 Kan. 1, 8, 722 P.2d 1106 (1986). Generally, an allegation of malice is inconsistent with the scope of employment. *See Williams v. Community Drive-In Theater*, 214 Kan. 359, 520 P.2d 1296 (1974) ("if … an employee is motivated entirely by personal reasons such as malice or spite or by a desire to accomplish some unlawful purpose and does not have for its purpose the furtherance of the employer's business, it will be considered personal to the employee").

The court finds that the Amended Complaint may be fairly read to include the allegation that Carrera was acting outside the scope of his employment for purposes of Count III.

Accordingly, the court will dismiss that part of Count I to the extent that it raises claims under Sections 7 and 8 of the NLRA, as well as the defamation claim advanced in Count II. The plaintiff's Count I FLSA retaliation claim against the Tyson entities, and Count III tortious interference action against Carrera, remain.

IT IS SO ORDERED this 20th day of August, 2012, that the defendants' Motion to Dismiss (Dkt. 24) is granted in part, as provided herein.


s/J. Thomas Marten
J. Thomas Marten, Judge