IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Antonio Garcia,

        Plaintiff,

vs.                                    Case No. 11-1141-JTM

Tyson Foods, Inc., et al.,

        Defendants.

MEMORANDUM AND ORDER

Plaintiff Antonio Garcia was terminated from his employment by Tyson Foods, Inc., in 2010. He brought this action which alleges that Tyson terminated him in retaliation for his participation in a separate federal action against the company. Tyson has moved for summary judgment, and the court finds that Garcia has failed to provide necessary evidence in support of his claim of retaliation.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have

no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

*Findings of Fact*

Tyson owns and operates beef processing facilities in Finney County, Kansas, where Garcia began working on July 7, 2004. Garcia worked in the offal department packaging hearts under the supervision of Juan Carrera.

Garcia became a class representative in a wage and hour class action filed against Tyson in 2006.

On May 21, 2010, Garcia and Carrera had a confrontation. Garcia was suspended from May 24, 2010 to June 9, 2010, while Mitch Young, Tyson's Complex Human Resources Manager, investigated the incident.

Garcia gave a written statement on May 24, 2010, contending that Carrera had confronted him because Garcia had seen him sexually harassing Roxanne Cruz. Garcia made no mention in his written statement that he believed the confrontation was caused by his involvement with Fair Labor Standards Act (FLSA) protected activities.

Garcia admits that Tyson terminated his employment because Tyson believed he had a physical altercation with Carrera:

> Q: Do you believe – rather, do you contend in this lawsuit that Tyson believed the words that Juan Carrera told Tyson about you?
>
> A: Yes, of course. That's why I'm no longer with Tyson.
>
> Q: Okay. So you contend that Tyson believed Mr. Carrera when Mr. – when Mr. Carrera said that you had a physical altercation with him?
>
> A: That's correct.
>
> Q: And as a result of believing that information that was reported by Mr. Carrera, Tyson terminated your employment?
>
> A: Yes.

Carrera gave a written statement on June 7, 2010, which alleged that Garcia had physically pushed him after he talked with Garcia about being away from his workstation. Carrera stated that he never sexually harassed Cruz.

Other employees also provided written statements regarding the incident. Rafael Murrillo stated that Carrera called him over the radio, stating that Garcia was observed in a work area that could cause cross contamination. Carrera asked Garcia to go back to his work station because of possible cross contamination, and Garcia responded by saying that Carrera was mentally ill and crazy. Murillo saw Garcia pushing Carrera with his chest at the end of the shift.

Omar Castrejon stated that he saw Carrera ask Garcia to go back to his work area because he was going to contaminate the hearts, and in response, Garcia got mad, "throwing his hands and arms around like a mad man" and followed Carrera, saying bad things.

Jose Godinez stated that he observed Garcia being very aggressive toward Carrera and pushing Carrera with his chest.

Guadalupe Chavez was speaking with Carrera when a man came up and pushed Carrera aggressively.

Maria Auina saw Garcia run after Carrera as he left the offal department and that Garcia was "angry and looked upset moving his hands and body everywhere."

Emanuel Alarcon saw Carrera tell Garcia to return to his work area, and immediately afterward, Garcia followed Carrera while making offensive signs. During the shift change, he saw Garcia push Carrera with his chest at the trim rail area.

Miguel T. Duarte Torres saw Garcia in an area he was not allowed, and he saw Carrera tell Garcia to return to his work area. After Carrera told Garcia to return to his work area, Garcia told him "that damned little old man is crazy" and Garcia made signs with his hands toward Carrera.

Elvia Rubio saw Garcia and Carrera arguing and, when Carrera left the area, Garcia went after Carrera.

Elizabeth Cruz saw Garcia yelling and pointing at Carrera, Carrera calling Rafael Murrillo to help the situation, and Carrera and Garcia arguing as she was leaving to go home.

Roxanna Cruz provided Tyson with a written statement dated June 7, 2010, stating that she has never been sexually harassed by Juan Carrera.

As part of his investigation, Young obtained and reviewed the witness statements submitted by Garcia, Carrera, Murrillo, Castrejon, Godinez, Chavez, Auina, Alarcon, Duarte Torres, Rubio, Elizabeth Cruz, and Roxanne Cruz.

Young met with Garcia on June 4, 2010, to go over Garcia's statement. Young asked Garcia if he needed to make any changes to his statement or if there were any additional witnesses he should talk with, and Garcia told him no. Garcia told Young that Carrera

wanted to have him fired because Garcia had witnessed Carrera sexually harassing Roxanne Cruz. Garcia stated that he did not report the sexual harassment to anyone.

Young also personally spoke with Carrera, who told him that he did not improperly hug or touch Roxanne Cruz, and with Roxanne Cruz, who told him that Carrera had never sexually harassed her.

As a result of his investigation, Mitch Young believed Garcia had a physical confrontation with management. Young provided Tyson with a written summary, dated June 7, 2010, of his investigation of the confrontation between Garcia and Carrera.

Garcia was terminated from Tyson on June 9, 2010, which became effective on June 10, 2010, for having a physical confrontation with management.

The three class representatives in *Garcia, et al. v. Tyson Foods*, No. 06-CV-2198-JTM, were Garcia, Adelina Garcia, and Jeronimo Vargas-Vera. Adelina Garcia is currently employed at Tyson's Finney County facility. Jeronimo Vargas-Vera voluntarily stopped working at Tyson to return to his hometown in Mexico:

> Q: Okay. Now, the reason you're no longer working at Tyson is simply because you decided you didn't want to work any more, is that correct?
>
> A: That's right.
>
> Q: And you, before you quit, you didn't tell anybody at Tyson that you were going back to Mexico, is that correct?
>
> A: Yes, that's right.
>
> Q: And you just took a vacation and simply didn't return to work, is that correct?
>
> A: That's right.

*Conclusions of Law*

Tyson seeks summary judgment on two grounds. First, it contends that Garcia has failed to demonstrate one of the essential elements of a prima facie case of retaliation, having failed to show a causal connection between his protected FLSA activity and his

termination. *See McMillin v. Foodbrands Supply Chain Servs., Inc.*, 272 F. Supp. 2d 1211, 1218 (D. Kan. 2003). Second, it contends that even if Garcia had presented a prima facie case, Garcia's apparent assault on Carrera was a legitimate, non-discriminary reason for the termination.

Garcia provides no substantial response to these arguments, other than generally contending that it is improper to rely on affidavits as a basis for obtaining summary judgment. For this argument, Garcia relies on language from *Jackson v. Griffith*, 480 F.2d 261, 267 (10th Cir. 1973), which was rendered a decade before the Supreme Court's decisions supporting modern summary judgment practice in *Matsushita* and *Celotex*. *See Celotex*, 477 U.S. at 324 (party opposing summary judgment may not rest on pleadings, but must affirmatively demonstrate material factual controversy). Rule 56 explicitly authorizes the filing of affidavits in support of motions for summary judgment. And *Jackson* itself acknowledges that under Rule 56, affidavits may be used "to show whether any issue of material fact exists." *Id.*

Here, Young's affidavit reflects both his own personal knowledge of his investigation, and incorporates written employee statements addressing matters occurring in the workplace. These statements attached to Young's affidavit are properly admissible as business records. *See IBP, Inc. v. Mercantile Bank of Topeka*, 6 F.Supp.2d 1258, 1263 (D.Kan.1998); *In re Harris*, 209 B.R. 990, 996 (B.A.P. 10th Cir.1997) (quoting 11 James Wm. Moore, MOORE'S FEDERAL PRACTICE §§ 56.10[4][c][I], 56.14[2][c] (3d ed.1997)).

The evidence before the court demonstrates no causal connection between Garcia's FLSA activity and his termination. Garcia has failed to present any "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (citing *Burrus v. United Tel. Co. of Kan.*, 683 F.2d 339, 343 (10th Cir. 1982)). "Unless

6

there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *Id.*

Here, Garcia's participation in the FLSA class action occurred when he became a class representative in 2006. Four years thus elapsed between the protected activity and the plaintiff's termination, a period which provides no suggestion of a retaliatory motive. *See Anderson v. Coors Brewing*, 181 F.3d 1171, 1179 (10th Cir. 1999) (three-month gap standing alone was insufficient to demonstrate causation); *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1234 (10th Cir. 2000) (six-month gap). Here, Garcia has failed to demonstrate any event in the FLSA action before his termination which could give an inference of retaliation. He has also failed to present any other admissible evidence which would create an inference. In contrast, Tyson has presented evidence that the other class representatives in the FLSA action suffered no adverse employment effects. In light of the evidence in the case, the court finds that plaintiff has failed to establish a prima facie case of retaliation.

But even if Garcia had presented a prima facie case of retaliation, summary judgment would still be warranted, as Tyson had a legitimate, non-discriminatory reason for the termination. Given the statements of multiple employees stating that the plaintiff assaulted his supervisor, Tyson was justified in the termination. *See Watts v. City of Norman*, 270 F.3d 1288, 1295 (10th Cir. 2001). The issue is not whether Garcia in fact assaulted Carrera, but whether Tyson could have reasonably believed he did. *Id.* The evidence from plaintiff's co-workers provided a reasonable basis for the employer to act as it did.

IT IS ACCORDINGLY ORDERED this 10th day of December, 2012, that the defendant's Motion for Summary Judgment (Dkt. 43) is hereby granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE